**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

B.M.B.,

Plaintiff,

v.

Civil No. 01-355 (RHK/AJB)
**MEMORANDUM OPINION AND ORDER**

State Farm Fire & Casualty Company,

Defendant.

---

Robert J. Hennessey and Mark H. Zitzewitz, Lindquist & Vennum, Minneapolis, Minnesota, for Plaintiff.

C. Todd Koebele and Michelle D. Christensen, Murnane, Conlin, White & Brandt, St. Paul, Minnesota, for Defendant.

---

## Introduction

Plaintiff B.M.B. is the assignee of a personal liability umbrella policy issued to Ronald K. Halliday, III by Defendant State Farm Fire & Casualty Company ("State Farm"). Halliday sought coverage under the umbrella policy after B.M.B.'s parents, on her behalf, instituted a civil action against him when they learned that he had sexually abused B.M.B. B.M.B. commenced the present suit against State Farm after it refused to provide coverage for Halliday under the terms of the umbrella policy. Before the Court is B.M.B.'s Motion for Partial Summary Judgment and State Farm's Motion for Summary Judgment. For the reasons stated below, both Motions will be denied.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## Background

Halliday was a practicing anesthesiologist in Faribault, Minnesota.[1] (Id. Ex. 29 at 84.) B.M.B. is his niece and a current resident of Arizona. (Christensen Aff. Ex. 34 at 4, 6.) In June of 1992, Halliday sexually abused B.M.B., who was then ten years old, when she was visiting him, his wife and their children in Faribault. (Id. Ex. 34 at 8, 14-15, Ex. 34 at 74.) At the time, he and his wife had an umbrella policy through State Farm.[2] (Id. Ex. 1.) State Farm is an Illinois corporation based in Bloomington, Illinois. (Compl. ¶ 2.)

### I. The Policy

On April 1, 1992, State Farm issued a personal liability umbrella policy, policy number F 23-C8-8215-4 (the "Policy"), to Halliday and his wife. (Christensen Aff. Ex. 1.) The Policy provides:

> 1. Coverages L–Personal Liability. If you are obligated to pay damages for a loss, we will pay your net loss minus the retained limit. . . .
> 2. Defense and Settlement.
>    b. When the claim or suit is covered by this policy but not covered by any other policy available to you:
>       (1) we will defend the suit against you;

[1]The Minnesota Board of Medical Practice revoked Halliday's medical license after discovering a criminal conviction and other instances of sexual abuse. See B.L.H. v. Northwestern Mut. Life Ins. Co., 92 F. Supp. 2d 910, 912 (D. Minn 2000) (Alsop, J.) (giving factual background with respect to Halliday's medical license revocation).

[2]Halliday and his wife also had a homeowner's policy through State Farm but that policy is not at issue in this case. (Christensen Aff. Ex. 36.)

(Id. Ex. 1 at SF0079 (emphasis added).) A loss is defined as "an accident that results in personal injury or property damages during the policy period." (Id. Ex. 1 at SF0077 (emphasis added).) Personal injury is defined to include four categories of injury, including assault and battery and false imprisonment. (Id. Ex. 1 at SF0078.)

Under the Exclusion section, the Policy contains an intentional act exclusion, which provides:

> We will not provide insurance:
>
> * * *
>
> 2. for personal injury or property damage:
>    a. which is either expected or intended by you; or
>    b. to any person or property which is the result of your willful and malicious act, no matter at who the act was directed.

(Id. Ex. 1 at SF0080.)

**II. Underlying Suit**

In March 1994, Halliday's wife discovered him sexually abusing their eight-year-old daughter. (Christensen Aff. Ex. 33 at 8.) He was subsequently charged with three counts of criminal sexual conduct. (Id. Ex. 2.) He eventually pled guilty to one count. (Id.)

As part of his sentence, the state court ordered Halliday to complete sex offender treatment at Alpha Human Services ("Alpha House"). (Id. Ex. 40.) While in treatment, Halliday admitted to sexually abusing numerous other girls and women, including B.M.B. (Id. Ex. 5.) In a deposition, he described in detail the sequence of events that led him to abuse B.M.B. (Id. Ex. 29 at 74.) He admitted performing oral sex on B.M.B., and he

conceded that such an act constituted sexual abuse. (Id.) At Alpha House, Halliday was required to complete a questionnaire to move onto the next stage of treatment. (Id. Ex. 5.) In that questionnaire, he provided detailed answers regarding whom he had abused, why he abused children and women, how he felt when he abused his victims, and what he intended by his actions. (Id.)

In June 1995, B.M.B.'s parents, on her behalf, (collectively "Claimants") commenced a civil lawsuit against Halliday in Rice County District Court. At the same time, Halliday's wife brought a similar suit against him relating to his abuse of their two daughters. (Id. Ex. 8.) In the underlying B.M.B. complaint, Claimants allege seven causes of action against Halliday: (1) assault and battery, (2) incestuous abuse, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, (5) false imprisonment, (6) invasion of privacy, and (7) restitution for out-of-pocket expenses. (Id. Ex. 7.) Claimants brought the action as a result of Halliday's "physical and sexual abuse of [B.M.B.] when she was a minor child at the age of 10." (Id. Ex. 7 ¶ 4.) At the time of the abuse, they allege that Halliday had control over B.M.B. and that Halliday "intentionally, maliciously, and with reckless disregard inflicted injury on B.M.B. through intentional, malicious, unjustified, harmful, and offensive sexual contact without her consent." (Id. ¶¶ 6, 9.)

Halliday sought coverage from State Farm under his umbrella policy as well his homeowner's policy. After completing an investigation, State Farm declined to provide coverage for Halliday under either policy. Coverage was denied because it was

questionable (1) whether there had been a "loss" under the policy, (2) whether the alleged incidents had resulted in personal injury, and (3) whether the incidents were "expected or intended" by Halliday or were the result of "willful and malicious" acts by Halliday. (Id. Ex. 10 at SF0017-18.)

In Halliday's Answer to B.M.B.'s Complaint, he admitted his sexual contact with B.M.B. on one occasion. (Id. Ex. 9 ¶ B.) The state court consolidated B.M.B.'s case with the case that Halliday's wife filed on behalf of her daughters. (Id. Ex. 13.) At trial, Halliday testified that he had sexually abused both of his daughters and B.M.B. He also agreed that his actions showed that he acted with "willful indifference" to B.M.B. (Id. Ex. 13 at 19.) The jury returned a verdict against Halliday and awarded B.M.B. $100,000 in compensatory damages (later reduced by the court to $95,000) and $1,500,000 in punitive damages. (Id. Ex. 14.) The jury also awarded Halliday's daughters $1,950,000 in compensatory damages and $7,000,000 in punitive damages. (Id. Ex. 15.)

After the judgment was entered against Halliday, B.M.B. received $115,011.25 from a collection proceeding against Halliday's pension. (Id. Ex. 16.) She also received approximately $222,222.00 as part of a settlement stemming from a second insurance lawsuit in which the jury found in favor of B.M.B. and Halliday's wife.[3] (Id. Exs. 21-23.)

---

[3]The second insurance lawsuit is the action referred to in footnote 1. For more information regarding that action, see B.L.H., 92 F. Supp. 2d at 910 and Zitzewitz Aff. Ex. C. (Judge Alsop's post-trial Order dated September 15, 2000.)

In addition, Halliday assigned Claimants his rights, if any, to "all proceeds due under" the Policy to which Halliday is entitled to for coverage from the claims, which Claimants had asserted against Halliday. (Id. Ex. 20.) Pursuant to this assignment, B.M.B. sought coverage from State Farm for payment under the Policy. (Id. Ex. 24.) In a letter to State Farm, counsel for B.M.B. asserted that there was coverage for Halliday's acts under the Policy because the Policy was ambiguous and because Halliday lacked the requisite intent in his conduct so as to preclude the application of the policy's intentional act exclusion. (Id.) State Farm again denied coverage for the claims against Halliday.

### III. Procedural Posture

On February 26, 2001, B.M.B. commenced this action against State Farm, alleging breach of contract. (Compl.) In the First Amended Complaint, B.M.B., as the assignee of the Policy, alleges that State Farm breached its contract to Halliday by denying coverage to him in the underlying action by Claimants. (Id.) B.M.B. has now moved for partial summary judgment, contending that the Policy is ambiguous because it simultaneously grants coverage and excludes coverage for intentional acts. State Farm moved for summary judgment, contending that there is no coverage under the Policy for the claims alleged against Halliday because the Policy's exclusions preclude coverage for the claims against Halliday.

## Analysis

Summary judgment is proper if, viewing the record in the light most favorable

to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

> If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001) (quoting Celotex, 477 U.S. at 323 (1986)).

The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). The court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249. The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome

determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

## I. The Policy is not Ambiguous

General principles of contract interpretation apply to insurance policies.[4] Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). An insurance policy is construed according to the parties' terms, and the policy language must be given its usual meaning. In re Liquidation of Excalibur Ins. Co., 519 N.W.2d 494, 497 (Minn. Ct. App. 1994). Whether an insurance policy is ambiguous is a question of law. Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). If policy language is reasonably susceptible to more than one interpretation, the policy is ambiguous. Id. A policy may also be ambiguous if there is an irreconcilable conflict between provisions or terms within the policy. Rusthoven v. Commercial Standard Ins. Co., 387 N.W.2d 642, 644 (Minn. 1986). The court, however, "must not create an ambiguity where none exists in order to afford coverage to the insured." Progressive Cas. Ins. Co. v. Metcalf, 501 N.W.2d 690, 692 (Minn. Ct. App. 1993).

B.M.B. moved for partial summary judgment, asking the Court to determine that the Policy is ambiguous because it purports to cover injuries from "assault and battery"

---

[4]In insurance coverage actions involving diversity of citizenship, state law controls the analysis of the insurance policy. Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001). The parties have briefed the coverage issues under Minnesota law.

while simultaneously denying coverage for injuries that are "either expected or intended by" Halliday. The Policy provides coverage for a loss, which is defined as an accident that results in personal injury.

> Personal injury means:
> a. bodily harm, sickness, disease, shock, mental anguish or mental injury . . .
> b. false arrest, false imprisonment . . .
> c. libel, slander, defamation . . .
> d. assault and battery

(Nilan Aff. Ex. 1 at SF0078 (emphasis added).) Therefore, the Policy provides coverage for an accident that results in assault or battery. However, the Policy also provides that it will not provide coverage for "personal injury" which is either "expected or intended by" Halliday. (Id. Ex. 1 at SF0080.) Thus, the Policy excludes coverage for assault and battery which is either expected or intended by Halliday. Because assault and battery are intentional torts, B.M.B. argues that the grant of coverage and the exclusion of coverage are in conflict with one another. She relies upon Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618 (Fla. Dist. Ct. App. 1997) and Lineberry v. State Farm Fire & Cas. Co., 885 F. Supp. 1095 (M.D. 1995) to support her argument. She also contends that State Farm knows that the Policy was ambiguous because it has since been rewritten to exclude assault and battery from the definition of personal injury.

In both Purrelli and Lineberry, the courts concluded that umbrella policies, identical to the one at issue here, were ambiguous. In Purrelli, the issue before the court was whether a claim for invasion of privacy was covered under the policy. Purrelli, 698

So.2d at 620. The court explained, "[b]ecause an accident is by definition unintentional, an insurance contract that explicitly covers the intentional tort of invasion of privacy but limits coverage to 'accidents' is ambiguous." Id. at 621. In Lineberry, the court addressed the same issue as the Purrelli court. Lineberry, 885 F. Supp. at 1097. The court concluded that coverage provided under the umbrella policy was illusory because it covered injuries from invasion of privacy claims, an intentional tort, while excluding coverage for injuries that were expected or intended. Id. at 1099.

In response, State Farm argues that when read as a whole, the Policy only provides coverage for accidents. The Policy provides that State Farm will pay the insured's net loss if the insured is obligated to pay for "an accident that results in personal injury or property damage during the policy period." Although the term "accident" is not defined in the Policy, State Farm argues that an accident is something "unexpected" and if something is unexpected, it is unintended. Thus, the grant of coverage is not in conflict with the exclusion. State Farm contends that "the Policy will pay damages for an accident that results in personal injury, such as assault and battery." According to State Farm, a person can commit a battery by intending to touch a victim but at the same time can unintentionally injure the victim.

State Farm relies upon State Farm Ins. Cos. v. Gerrity, 968 P.2d 270 (Kan. Ct. App. 1998), where the issue before the court was whether the claims against the insured for sexual molestation of a minor were covered under the insured's umbrella policy--identical to the Policy here. Gerrity, 968 P.2d at 647. The court determined that the

umbrella policy was not ambiguous, holding that an intentional act may result in unintended injury and that the umbrella policy at issue covered only "unintended injury that results from an intentional act." Id.

The Policy here provides coverage for personal injury which is caused by a loss (defined as an accident) that results in personal injury. It does not state that it will cover any and all personal injuries; rather, it only provides coverage for personal injury that results from an accident. Thus, the focus is on the resulting injuries, not the act causing the injuries. The Policy does not define accident. The Minnesota Supreme Court, however, has defined accident to mean "an unexpected, unforeseen, or undesigned happening or consequence." Hauenstein v. St. Paul-Mercury Indem. Co., 65 N.W.2d 122, 126 (Minn. 1954). Coverage is therefore provided under the Policy for personal injury only when the external cause or the subsequent injury was either unexpected or unforeseen. If the subsequent injury was expected or intended, it is excluded under the intentional act exclusion. Accord State Farm Fire and Cas. Co. v. Doe, 797 P.2d 718, 719 (Ariz. Ct. App. 1990).

Based on the foregoing, the Court concludes that the coverage granted under the Policy and the intentional act exclusion do not create an irreconcilable conflict. Accordingly, the Court determines that the Policy is not ambiguous. The Court will deny B.M.B.'s Motion for Partial Summary Judgment.[5]

---

[5]Because the Court has determined that the Policy is not ambiguous, it need not reach B.M.B.'s argument regarding subsequent changes State Farm made to its umbrella

## II. Intentional Act Exclusion

An insurer assumes two duties to its insured: the duty to defend and the duty to indemnify. Reinsurance Assoc. of Minn. v. Timmer, 641 N.W.2d 302, 308 (Minn. Ct. App. 2002). The duty to defend is contractual and broader than the duty to indemnify. Meadowbrook, Inc. v. Tower Ins. Co., Inc., 559 N.W.2d 411, 415 (Minn. 1997). It arises when any part of the claim against the insured is arguably within the policy's scope. Reinsurance Assoc., 641 N.W.2d at 308. If, however, as a matter of law, there is no duty to indemnify, there is no duty to defend. See Woida v. North Star Mut. Ins. Co., 306 N.W.2d 570, 574 (Minn. 1981). As a matter of law, there is no duty to indemnify when claims asserted against the insured are clearly outside of the coverage provided under the policy. Haarstad v. Graff, 517 N.W.2d 582, 585 (Minn. 1994).

State Farm contends that the intentional act exclusion precludes coverage under the Policy at issue here so that as a matter of law, it has no duty to either defend or to indemnify Halliday. Although the initial burden is on the insured to prove that there is coverage, the insurer bears the burden of proving the application of an exclusion to the coverage otherwise provided for under the Policy. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 313-14 (Minn. 1995).

The Policy excludes coverage for personal injury that was "either expected or intended by [Halliday]." Based on this exclusion, State Farm moves for summary

---

policies.

judgment, arguing that there is no coverage under the Policy because Halliday intended the injuries to B.M.B. that resulted from his act of sexual abuse. According to State Farm, in Minnesota, intent to injure is inferred as a matter of law in sexual abuse cases. Thus, Halliday's acts of sexual abuse fall within the Policy's exclusion, and there is no coverage.

In response, B.M.B. contends that under State Farm Fire and Cas. Co. v. Wicka, 474 N.W.2d 324 (Minn. 1991), a jury must resolve whether Halliday intended to injure B.M.B.; that issue presents a genuine issue of material fact. According to B.M.B., Halliday had psychiatric disorders at the time of his sexual abuse that prevented him from controlling his actions. Because he could not control his actions, he could not have intended the injuries,[6] or at a minimum, a genuine issue of material fact is presented that must be resolved by a jury. Thus, the exclusion, under the facts presented here, does not preclude coverage under the Policy.

"The purpose of the intentional act exclusion is to deny the insured a license to commit wanton and malicious acts." Wicka, 474 N.W.2d at 331. It applies when the insured acts with the "specific intent to cause bodily harm" and when the insured "intended the harm itself, not merely that the insured generally intended to act." R.W. v.

[6]The Court notes that there is a conflicting posture to B.M.B.'s claim against State Farm. To succeed in the underlying case against Halliday and receive punitive damages, she needed to show that his actions were intentional and/or malicious. To succeed in this lawsuit and recover under the assignment, she needs to show that his actions were unintentional.

T.F., 528 N.W.2d 869, 873 (Minn. 1995). Thus, the appropriate question before the Court is not whether Halliday intended to sexually abuse B.M.B. but rather, whether he intended to cause the injuries to her that she complains of in the underlying state court action. The Minnesota Supreme Court has explained that the necessary intent for the intentional act exclusion can be established by either (1) proving an insured's actual intent to injure or (2) by inferring such intent as a matter of law." Id. (citing Wicka, 474 N.W.2d at 329).

Minnesota courts have inferred intent as a matter of law in numerous circumstances and "have established as a general rule that the inference of intent arises when the nature and circumstances of the insured's act were such that harm was substantially certain to result." R.W., 528 N.W.2d at 872; see e.g., Horace Mann. Ins. Co. v. Indep. School Dist. No. 656, 355 N.W.2d 413, 416 (Minn. 1984) (inferring intent when coach sexually abused a student); Woida, 306 N.W.2d at 573 (inferring intent when insured made plans to travel to a construction site and shoot at a truck when he knew that victims were inside); Cont'l Western Ins. Co. v. Toal, 244 N.W.2d 121, 126 (Minn. 1976) (inferring intent when insured armed himself with a loaded weapon to facilitate an armed robbery). There is, however, no bright light rule of law regarding when to infer intent. Instead, it is determined on a case-by-case basis, with the facts of particular importance being "those tending to show the likelihood of harm—the greater the likelihood of harm occurring, the more reasonable it is to infer intent." Id. at 873.

In Wicka, the insured's estate was sued by the victim whom the insured had shot

during an argument. Wicka, 474 N.W.2d at 325. Defense of the suit was submitted to the insured's insurance company, which declined coverage, contending that the intentional act exclusion in the insured's homeowner's policy precluded coverage because the insured acted intentionally. Id. at 326. Pursuant to an assignment of the insured's rights under his policy, the victim commenced a declaratory action against the insurance company, arguing that the insured lacked the mental capacity to intend to injure the victim. Id. The issue before the Minnesota Supreme Court was whether an insured's mental illness could defeat the application of the intentional act exclusion. Id. at 329. The court concluded:

> We hold, therefore, that for the purposes of applying an intentional act exclusion contained in a homeowner's insurance policy, an insured's acts are deemed unintentional where, because of mental illness or defect, the insured does not know the nature or wrongfulness of an act, or where, because of mental illness or defect, the insured is deprived of the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness.

Id. at 331.

Based on the Minnesota Supreme Court's decision in Wicka, B.M.B. argues that Halliday lacked the requisite intent to injure because he had psychiatric disorders that prevented him from controlling his actions. To support her argument, she has submitted the expert report of Dr. Gratzer, who concludes that Halliday has "paraphilic disorders that indicate[] a substantial lack of control." (Zitzewitz, Ex. A p. 2.) She also submits the expert reports of two other doctors, both of whom concur that paraphilic disorders cause a loss of control. (Id. Exs. B and C.)

Initially, it should be noted that the acts in Wicka did not involve sexual abuse, and the Wicka court did not discuss sexual abuse cases when it reviewed cases in which intent to injure had been inferred. See id. at 329-30. In cases since Wicka, however, the Minnesota Supreme Court has indicated that intent to injure can still be inferred in cases involving sexual contact, if the insured's act was such that harm was certain to result. See R.W., 528 N.W.2d at 873 (inferring intent when the insured engaged in sexual intercourse knowing that he had herpes; coverage was therefore excluded under the intentional act exclusion); Allstate Ins. Co. v. S.F., 518 N.W.2d 37, 40 (Minn. 1994) (invoking intentional injury exclusion as matter of law with respect to claims of nonconsensual sexual assault and battery). None of these cases, however, has addressed the application of Wicka's determination that a mental illness or defect could defeat the application of an intentional act exclusion.

In Sara L. v. Broden, 507 N.W.2d 24 (Minn. Ct. App. 1993), the Minnesota Court of Appeals specifically rejected the argument that the insured could not have intended his actions because he was a pedophile. Sara L., 507 N.W.2d at 26. Instead, the court reiterated the rule of law in Minnesota: "intent to cause injury will be inferred as a matter of law in nonconsensual sexual contact cases." Id. In so doing, however, the Court of Appeals made no reference to Wicka.

Under Minnesota law, the intent to injure can be inferred as a matter of law in nonconsensual sexual abuse cases, especially where the insured "acted with deliberate and calculated indifference to the risk of injury." American Family Ins. Co. v. Walser,

628 N.W.2d 605, 614 (Minn. 2001) (reviewing Minnesota case law concerning when it is appropriate to infer intent as a matter of law). This Court concludes, however, that the Minnesota Supreme Court would apply its holding in Wicka to a case involving sexual abuse. The trier of fact here must be allowed to determine whether Halliday, "because of a mental illness or defect, [was] deprived of the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness." Accordingly, the Motion for Summary Judgment will be denied.

**Conclusion**

Upon the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that

1. Plaintiff B.M.B.'s Motion for Partial Summary Judgment (Doc. No. 45) is **DENIED**;
2. Defendant State Farm Fire & Casualty Company's Motion for Summary Judgment (Doc. No. 49) is **DENIED**;
3. This case is deemed ready for trial as of December 2, 2002; a separate Order regarding the submission of trial materials is being filed this date; and
4. The matter is referred to Magistrate Judge Arthur J. Boylan for a settlement conference at such time, and under such conditions, as he directs.

Dated: September 30, 2002

Richard H. Kyle
United States District Judge