# STATE OF MINNESOTA

# JUDGMENT

B. M. B., Plaintiff, vs. State Farm Fire and Casualty Company, Defendant

Supreme Court

Appellate Court # 98C303000092

Trial Court # 01-CV-355 RHK.

*Pursuant to a decision of Supreme Court duly made and entered, it is determined and adjudged that the decision of the U. S. District Court, District of Minnesota herein appealed from be and the same hereby is answered and judgment is entered accordingly. A certified copy of the entry of judgment and the court's decision is herewith transmitted and made part of the remittitur.*

RECEIVED
BY U.S. MAIL
2003 AUG 13 AM 9:07
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

*Dated and signed: August 8, 2003*

*FOR THE COURT*

*Attest:* Frederick K. Grittner
*Clerk of the Appellate Courts*

*By:* [signature]
*Assistant Clerk*

AUG 13 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

135

cc to RHK

STATE OF MINNESOTA

IN SUPREME COURT

C3-03-92

United States District Court, District of Minnesota

Anderson, Russell A., J.

B. M. B.,

Plaintiff,

vs.

Filed: July 10, 2003
Office of Appellate Courts

State Farm Fire and Casualty Company,

Defendant.

## SYLLABUS

Where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, and where there is a genuine issue of material fact as to whether the insured's acts were "unintentional" because of mental illness, as set forth in the holding of *State Farm Fire & Casualty Co. v. Wicka*, 474 N.W.2d 324 (Minn. 1991), and therefore outside the scope of an insurance policy's intentional act exclusion, the trial court shall submit the issue to the jury and is not, as a matter of law, to infer the insured's intent to cause injury.

Certified question answered.

Heard, considered, and decided by the court en banc.

# OPINION

ANDERSON, Russell A., Justice.

Plaintiff B. M. B. obtained a judgment, in state district court, against Ronald K. Halliday for compensatory and punitive damages resulting from Halliday's nonconsensual sexual contact with B. M. B. Halliday's insurer, defendant State Farm Fire and Casualty Company (State Farm), denied coverage. Halliday then assigned his State Farm policy rights to B. M. B., who commenced suit for breach of insurance contract in federal district court against State Farm. The federal district court denied State Farm's motion for summary judgment on grounds that the policy's intentional act exclusion precluded coverage, but at State Farm's request, has asked us the following certified question:

> Where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, can the trial court submit to a jury the question of whether the insured's acts were "unintentional" because of mental illness as set forth in the holding of *State Farm Fire & Casualty Co. v. Wicka*, 474 N.W.2d 324 (Minn. 1991), and therefore outside the scope of an insurance policy's intentional act exclusion, or must the court infer the insured's intent to cause injury as a matter of law?

We answer and hold that where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, and where there is a genuine issue of material fact as to whether the insured's acts were "unintentional" because of mental illness, as set forth in the holding of *State Farm Fire & Cas. Co. v. Wicka*, 474 N.W.2d 324 (Minn. 1991), and therefore outside the scope of an insurance policy's intentional act exclusion, the trial court shall

submit the issue to the jury and is not, as a matter of law, to infer the insured's intent to cause injury.

I.

B. M. B. was 10 years old in June 1992, when she visited her uncle Ronald K. Halliday, a practicing anesthesiologist, and his family in Faribault, Minnesota. During the visit, Halliday sexually abused B. M. B. At the time B. M. B. was abused by Halliday, he was a named insured under a personal liability umbrella policy issued by defendant State Farm.

In June 1995, B. M. B's parents commenced a civil lawsuit in Rice County District Court against Halliday.[1] Halliday sought coverage from State Farm. State Farm declined to provide coverage, questioning, among other things, whether the incidents were "expected or intended" by Halliday or were the result of Halliday's "willful and malicious" acts, and denied it had any duty to defend or indemnify Halliday.[2] The jury

---

1 At the same time, Halliday's wife brought a similar suit relating to his abuse of their two daughters. These two cases were later consolidated. Criminal charges, arising out of the abuse of one of Halliday's daughters, were brought in 1994. He pleaded guilty to one charge of first-degree criminal sexual conduct.

2 In pertinent part, the personal liability umbrella policy provides indemnity if Halliday is "legally obligated to pay damages for a loss." "Loss" is defined as "an accident that results in personal injury or property damage during the policy period." "Personal injury" includes assault and battery. The policy includes the following exclusion: "[W]e will not provide insurance * * * for personal injury or property damage: a. which is either expected or intended by you; or b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed."

returned a verdict against Halliday and awarded B. M. B. $100,000 in compensatory damages, reduced by the court to $95,000, and $1,500,000 in punitive damages.

In June 1999, Halliday assigned to B. M. B.'s parents his rights, if any, to proceeds under his State Farm umbrella policy. B. M. B.'s attorney sent a demand letter to State Farm asserting that Halliday suffered from a mental illness at the time he abused B. M. B. in 1992 and claiming that, therefore, the policy's exclusion for expected or intended acts did not apply. State Farm did not alter its position that coverage did not exist, and B. M. B. brought this action against State Farm in federal district court, alleging that State Farm breached its duty to defend and indemnify Halliday in the underlying civil sexual abuse litigation in Rice County.

B. M. B. presented expert testimony from Dr. Thomas Gratzer, a psychiatrist, who concluded that Halliday had psychiatric disorders at the time of the abuse that prevented him from controlling his actions:

> [S]exual offenders represent a diverse group of individuals. Paraphilias[3] [sic] represent a small subset of sex offenders who meet the diagnostic criteria for a * * * sexual disorder. In my opinion, Mr. Halliday's aberrant sexual behaviors are a function of his sexual disorders. He shows a multiplicity of sexual disorders including pedophilia, voyeurism, paraphilic

---

[3] Paraphilia is defined as "[s]exual practices that are socially prohibited." *Stedman's Medical Dictionary* 922 (3rd Unabridged Lawyers' ed. 1972); *see also Mosby's Pocket Dictionary of Medicine, Nursing, & Allied Health* 937 (4th ed. 2002) ("sexual perversion or deviation"). The essential features of paraphilia include: "current, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons, that occur over a period of at least 6 months." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 522-23 (4th ed. 1994).

> disorder n.o.s.,[4] and sexual disorder n.o.s. Mr. Halliday's offense pattern * * * is consistent with his paraphilic disorders and indicates a substantial lack of control.[5]

(Footnotes added.)

On September 30, 2002, the federal district court denied State Farm's summary judgment motion. State Farm alleged that it had no duty under the policy to defend or indemnify Halliday because: (1) the policy contained an intentional act exclusion precluding coverage for personal injury that was "either expected or intended by [Halliday]," and (2) in Minnesota, the requisite intent for purposes of an intentional act exclusion is inferred as a matter of law in cases of nonconsensual sexual contact. In deciding the motion, the court considered *Wicka*, 474 N.W.2d 324 (Minn. 1991), which held that

> for the purposes of applying an intentional act exclusion contained in a homeowner's insurance policy, an insured's acts are deemed unintentional where, because of mental illness or defect, the insured does not know the nature or wrongfulness of an act, or where, because of mental illness or defect, the insured is deprived of the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness.

*Id.* at 331. The court denied summary judgment, concluding that *Wicka* applied under the facts of the case and there was a genuine issue of material fact as to whether Halliday's

---

4 According to Dr. Gratzer, n.o.s. stands for "not otherwise specified."

5 In another action, brought by Halliday's wife and B. M. B.'s parents on behalf of their children against a different insurer for damages resulting from Halliday's abuse, Dr. Gratzer explained that only a small group of individuals who are sexual offenders have a sexual disorder. Paraphiliacs represent a very small subset—only one to two percent—of sexual offenders.

acts could be deemed "unintentional" because of mental illness, precluding the applicability of the policy's intentional act exclusion.

State Farm moved to certify two questions. The district court, granting the motion in part, certified the following question to this court

> Where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, can the trial court submit to a jury the question of whether the insured's acts were "unintentional" because of mental illness as set forth in the holding of *State Farm Fire & Casualty Co. v. Wicka*, 474 N.W.2d 324 (Minn. 1991), and therefore outside the scope of an insurance policy's intentional act exclusion, or must the court infer the insured's intent to cause injury as a matter of law?

II.

A certified question is a question of law which we review de novo. *Conwed Corp. v. Union Carbide Chems. & Plastics Co.*, 634 N.W.2d 401, 406 (Minn. 2001); *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn. 2001). Construction of an insurance contract, the underlying issue, is also a legal issue subject to de novo review. *Dohney*, 632 N.W.2d at 600.

We begin our analysis with a brief overview of applicable insurance law principles. Where a comprehensive general liability policy contains an intentional act exclusion, there is no coverage for injury where the insured acts with the specific intent to cause bodily injury. 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 201:18, at 201-41 (3d ed. 1999); *Woida v. North Star Mut. Ins. Co.*, 306 N.W.2d 570, 573 (Minn. 1981); *see also Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 612 (Minn. 2001) (quoting *Tower Ins. Co. v. Judge*, 840 F. Supp. 679, 690 (D. Minn. 1993) ("[T]he question whether [the victim's] death was an 'accident' and the question whether the

intentional act exclusions apply are, for all practical purposes, identical issues.")). The specific intent to cause injury requires "that the insured intended the harm itself, not that the insured intended to act." *Wicka*, 474 N.W.2d at 329; *accord Caspersen v. Webber*, 298 Minn. 93, 98-99, 213 N.W.2d 327, 330 (1973); *see, e.g.*, *Walser*, 628 N.W.2d at 613 (agreeing with the district court finding that Walser acted intentionally but not with the specific intent to cause injury). Under this subjective standard, the intent to injure may be established: (1) by proof of an actual intent to injure, or (2) by inferring intent as a matter of law. *Wicka*, 474 N.W.2d at 329; *Woida*, 306 N.W.2d at 573. Whether proven directly or inferred, intent to cause injury "reflects the insured's state of mind about the desired harmful consequences of an action by the insured." *Wicka*, 474 N.W.2d at 329.

The general rule is that intent is inferred as a matter of law "when the nature and circumstances of the insured's act [are] such that harm [is] substantially certain to result." *R.W. v. T.F.*, 528 N.W.2d 869, 872 (Minn. 1995); *see also Am. Family Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 420 (Minn. 1987). In such cases, the court holds as a matter of law that the insured's conduct comes within the intentional act exclusion of a liability policy. *Id.* at 421.

In *Woida*, for example, the court inferred intent to cause injury where the insured made a plan with others to fire shots at a truck he knew to be occupied and fired several shots at the truck from a high-powered rifle. 306 N.W.2d at 571, 573-74. In *Iowa Kemper Insurance Co. v. Stone*, the court affirmed the trial court's determination that the insured demonstrated intent to cause injury where, after agreeing to settle a dispute by fighting, the insured wrapped his fist with his belt and struck another, causing injury. 269

N.W.2d 885, 886-87 (Minn. 1978). In *Continental Western Insurance Co. v. Toal*, the court concluded that intent to cause bodily injury could be inferred where the insureds had planned an armed robbery at a bowling alley and knew that their weapons were loaded and that someone might be harmed or killed, even though they did not specifically intend to shoot anyone during the robbery. 309 Minn. 169, 177-78, 244 N.W.2d 121, 122-23, 126 (1976). Thus, because harm is substantially certain to result, intent to harm is inferred as a matter of law in cases of nonconsensual sexual contact such as rape or sexual assault where mental illness is not at issue. *See, e.g., Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 699 (Minn. 1996); *Allstate Ins. Co. v. S. F.*, 518 N.W.2d 37, 40-41 (Minn. 1994); *Horace Mann Ins. Co. v. Indep. Sch. Dist. No. 656*, 355 N.W.2d 413, 416 (Minn. 1984); *State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421, 424 (Minn. 1984); *Estate of Lehman v. Metzger*, 355 N.W.2d 425, 426 (Minn. 1984); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834, 835 (Minn. 1982).

However, in situations where the evidence permits the trier of fact to infer that the insured did not intend his conduct to cause injury, whether the insured intended to injure his victim will be put to the trier of fact. *Wicka*, 474 N.W.2d at 330; *Peterson*, 405 N.W.2d at 421. "This inference may arise where the insured's actions are more in the nature of an instinctive reflex or a sudden impulsive defensive reaction to a provocative situation" because the circumstances suggest "that the insured was not the master of his own will." *Peterson*, 405 N.W.2d at 421; *Wicka*, 474 N.W.2d at 330; *see, e.g., Smith v. Senst*, 313 N.W.2d 202, 203-04 (Minn. 1981) (rejecting insured's claim of reflexive action where insured voluntarily participated in barroom dispute); *Brown v. State Auto. &*

*Cas. Underwriters*, 293 N.W.2d 822, 824-25 (Minn. 1980) (affirming denial of summary judgment where insured struck baggage clerk after insured was injured in tug-of-war over luggage); *Farmers Ins. Exch. v. Sipple*, 255 N.W.2d 373, 376-77 (Minn. 1977) (determining that the issue of intent should be submitted to the jury where the facts suggested that the insured acted instinctively in the form of a reflex when he struck another during a heated exchange); *see also Peterson*, 405 N.W.2d at 422 (noting that assault committed by intoxicated insured was not within the reasonable expectations of the policy, "[a]bsent an understandably provocative situation which induces an instinctive reflex or an impulsive defensive reaction," and noting that a different rule might apply to mental illness). For the same reason, as *Wicka* held, where the insured suffers from a mental illness, whether the insured intended his conduct to cause injury is a question for the jury. 474 N.W.2d at 330-31. *See also State Farm Fire & Cas. Co. v. Ewing*, 269 F.3d 888, 892-93 (8th Cir. 2001) (determining that the insured's act of bludgeoning his sister to death was unintended because the insured was unable to control his actions because of mental illnesses); *Essex Ins. Co. v. Davidson*, 248 F.3d 716, 720 (8th Cir. 2001) (concluding that the battery exclusion was inapplicable where the insured lacked the ability to form the intent to commit a battery because of his schizophrenia).

In the case at bar, State Farm argues that, in cases involving sexual abuse, intent to injure is inferred as a matter of law because of the nature of the act and because public policy mandates no insurance coverage for intentional acts of sexual abuse. State Farm notes that Minnesota courts have continued to infer intent to injure as a matter of law in cases of sexual abuse post-*Wicka* and that other jurisdictions have held that intent to

injure is inferred as a matter of law in cases of sexual abuse. Finally, State Farm posits that, if *Wicka* is to be applied to the instant facts, it should apply the "new" rule prospectively and not to this case.

B. M. B. counters that *Wicka* is applicable to this case because it addresses all situations involving mental illness and its rule is not dependent upon the nature of the underlying act. B. M. B. contends that there is no reasonable public policy to carve an exception out of the *Wicka* rule for acts of nonconsensual sexual assault arising from a mental disorder. As for prospective application of *Wicka* to claims involving nonconsensual sexual contact, B. M. B. rejoins that applying *Wicka* to claims involving sexual abuse would not create a new principle of law or overrule long-standing precedent.

We agree with B. M. B. and hold that where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, and where there is a genuine issue of material fact as to whether the insured's acts were "unintentional" because of mental illness, as set forth in the holding of *Wicka*, 474 N.W.2d at 331, and therefore outside the scope of an insurance policy's intentional act exclusion, the trial court shall submit the issue to the jury and is not, as a matter of law, to infer the insured's intent to cause injury.

We begin the explanation for our holding with a discussion of *Wicka*. In *Wicka*, the insured, who suffered from a mental illness, shot and wounded another man before killing himself. 474 N.W.2d at 325. The victim sued the insured's estate, which tendered the claim to State Farm under a homeowner's policy. *Id.* at 325-26. State Farm brought a declaratory judgment action seeking to avoid liability under the policy's intentional act

exclusion which excluded from coverage "'bodily injury * * * which is expected or intended by the insured.'" *Id.* at 326. The district court granted summary judgment for State Farm. *Id.* The court, not accepting the proffered evidence of the insured's mental illness, held that the insured's intent to injure should be inferred as a matter of law because "'his act is deemed to have been intentional regardless of his mental capacity to form intent.'" *Id.* at 326. The Minnesota Court of Appeals reversed, holding that the intentional act exclusion does not apply to "'injuries resulting from acts committed at a time when, because of mental illness, the insured is unable to control his or her conduct in accordance with reason.'" *Id.* at 326.

We affirmed the court of appeals' decision to reverse summary judgment. *Id.* at 333. We noted that for an intentional act exclusion to apply, the insurer must prove, under a subjective standard, that the insured intended to harm his victim; "[w]hether proven directly or by inference, the intent to cause bodily injury reflects the insured's state of mind about the desired harmful consequences of an action by the insured." *Id.* at 329. We distinguished case law dealing with instances of nonconsensual sexual abuse where intent was inferred as a matter of law, explaining that the insured's mental capacity was not at issue. *Id.* The facts in those cases demonstrated that "the insureds understood the obvious nature of their respective actions and the foreseeability of harm flowing from those actions." *Id.*

Thus, we determined that a mental illness may affect an individual's ability to understand or control his or her conduct because the requisite intent "demands that the insured's actions be voluntary, originating from [the] insured's own free will." *Id.* at 330.

Recognizing both cognitive and volitional elements of intent, either of which can be affected by a mental illness, we held that, for purposes of applying an intentional act exclusion in an insurance policy, an insured's acts are unintentional regardless of any cognitive understanding of the nature of the act or its wrongfulness "where, because of mental illness or defect, the insured is deprived of the ability to control his conduct."[6] *Id.* at 331. In support for our holding, we reasoned that the law "strikes a delicate balance between societal and individual interests when dealing with the rights and responsibilities of the mentally ill" and that the purpose of the intentional act exclusion—"to deny the insured a license to commit wanton and malicious acts"—is inapplicable because disincentives do not work for "persons who, because of mental illness, lack the capacity to conform [their] conduct to the law." *Id.* at 330-31.

We do not interpret *Wicka* as suggesting that certain acts, such as acts of nonconsensual sexual abuse, are excluded from its rule. Rather, *Wicka's* holding operates independently from the underlying injurious conduct. As we reflected in *Wicka*, "[I]n accord with this principle, our prior cases reveal that instinctual, reflexive or otherwise involuntary actions do not evidence the malign animus that points to an intent to cause bodily injury." *Id.* at 330. The relevant inquiry focuses on the insured's intent

---

6 State Farm also sought to certify the following question: "Under the *Wicka* analysis, must both the lack of cognition and the lack of volition on the part of the insured, because of mental illness, be established in order to defeat the application of an intentional act exclusion in an insurance policy?" The district court, concluding that there was no need to certify this question because *Wicka's* holding is unambiguous, stated, "if an insured lacks *either* the cognitive aspect *or* the volitional aspect of intent

(Footnote continued on next page.)

because "[t]he law [regarding the intentional act exclusion] rests on a postulate of free will—that all persons of sound mind are presumed capable of conforming their conduct to the requirements of the law, and when any person freely chooses to violate the law or intrude upon another's rights, that person may justly be held responsible." *Id.* Because the policy rationale behind the intentional act exclusion is inapplicable where the insured suffers from a mental illness and because the insured-against conduct involves injury to members of the public, the majority of jurisdictions, in agreement with our position on this issue, has held that where the insured suffers from a mental illness, the intentional act exclusion does not apply. *State Farm Fire & Cas. Co. v. Wicka*, 461 N.W.2d 235, 239 (Minn. App. 1990) (citing *Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098, 1110 (Cal. 1978); *Ruvolo v. American Cas. Co.*, 189 A.2d 204, 207-09 (N.J. 1963), and others). *See generally* Joseph R. Long, II, Note, N. N. v. Moraine Mutual Insurance Co.: *The Liability Insurance Intentional Injury Exclusion in Cases of Child Sexual Abuse*, 1991 Wis. L. Rev. 139 (1991) (concluding that requiring an actual intent to harm to trigger intentional act exclusion is consistent with literature on pedophilia); Catherine A. Salton, *Mental Incapacity and Liability Insurance Exclusionary Clauses: The Effect of Insanity upon Intent*, 78 Cal. L. Rev. 1027 (1990) (reviewing courts' treatment of mental illness in cases involving intentional act exclusions).

---

(Footnote continued from previous page.)
due to a mental illness, the insured's acts will be deemed 'unintentional' for purposes of applying an intentional act exclusion."

We now turn to State Farm's argument that Minnesota courts have continued to infer intent to injure as a matter of law in sexual abuse cases following *Wicka*. The four cases cited by State Farm are distinguishable from the instant case on their facts. In three of those cases, *Houg v. State Farm Fire & Casualty Co.*, 481 N.W.2d 393 (Minn. App. 1992), *Rulli v. State Farm Fire & Casualty Co.*, 479 N.W.2d 87 (Minn. App. 1992), and *Allstate Insurance Co. v. Steele*, 885 F. Supp. 189 (D. Minn. 1995), *aff'd*, 74 F.3d 878 (8th Cir. 1996), there is simply no record of mental illness.

In the fourth case cited by State Farm, *Sara L. v. Broden*, the court noted that Broden, who sexually abused two grandchildren, was "a diagnosed and admitted pedophile." 507 N.W.2d 24, 25 (Minn. App. 1993). During the period of sexual abuse, Broden was insured, but the two insurers denied coverage, alleging that his acts were intentional and therefore excluded. *Id.* at 25-26. In a published opinion, the court of appeals held that "[t]he district court properly inferred intent to cause injury as a matter of law" even though the offender was a pedophile. *Id.* at 26.

While it is true that the underlying facts and the legal issue presented in *Sara L.* appear to mirror the facts and issue presented here, the *Sara L.* opinion does not evidence the concerns present in this case. In *Sara L.*, the court noted that Broden was "a diagnosed and admitted pedophile" but made no record of the nature or extent of Broden's illness. *See id.* at 25-26. In the present case, Halliday has been diagnosed as having multiple sexual disorders, pedophilia being one of them, and the expert witness, who opined that "Halliday's offense pattern is consistent with his paraphilic disorders," did not link Halliday's behavior to pedophilia alone. Furthermore, because paraphiliacs

represent a very small percentage of all sexual offenders, it is possible that Broden, though a sexual offender suffering from a sexual disorder, was able to control his conduct. We cannot say that *Sara L.* contradicts *Wicka* unless there was a genuine issue of material fact regarding Broden's ability to understand the nature of his acts or their wrongfulness or Broden's ability to control his conduct because of his mental illness. As we cannot say that there was a disputed factual issue regarding Broden's ability to understand the nature of his acts or their wrongfulness or Broden's ability to control his conduct because of his mental illness, we conclude that *Sara L.* is inapposite.

Finally, because we conclude that the *Wicka* rule is applicable to situations where mental illness is appropriately raised as a defense to insurance coverage for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, we address State Farm's contention that, if *Wicka* applies to the instant facts, it should apply the "new" rule prospectively and not to this case.

"The general rule is that, absent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only, the decision is to be given retroactive effect." *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982). In *Chevron Oil Co. v. Huson*, the United States Supreme Court set out a three-factor test to determine when an exception to this general rule is appropriate. 404 U.S. 97, 106-07 (1971). The first factor of this test, at issue here, requires that "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first

impression whose resolution was not clearly foreshadowed." *Id.* at 106 (citations omitted).

We need not dwell on State Farm's argument that deviating from inferring intent as a matter of law in sexual abuse cases would overrule clear past precedent on which insurance companies have relied. Applying *Wicka* to this case does not create new law—we merely apply *Wicka* to the instant facts. Nor does applying *Wicka* to this case overrule clear past precedent—this court has never ruled on the issue of the effect of mental illness on a person's intent to commit nonconsensual sexual assault within the context of insurance coverage. Furthermore, our decision here does not affect the line of cases holding that intent is inferred as a matter of law in cases of sexual abuse where there is no mental illness defense.

Therefore, we conclude that the rule we announce today—that where insurance coverage is being or has been sought for personal injury or bodily harm resulting from an insured's nonconsensual sexual contact with another, and where there is a genuine issue of material fact as to whether the insured's acts were "unintentional" because of mental illness, as set forth in the holding of *Wicka*, 474 N.W.2d 324 (Minn. 1991), and therefore outside the scope of an insurance policy's intentional act exclusion, the trial court shall submit the issue to the jury and is not, as a matter of law, to infer the insured's intent to cause injury—applies retroactively.

Certified question answered.

State of Minnesota, Supreme Court
I hereby Certify that the foregoing Instrument is a true and correct copy of the original as the same appears on record in my office this 10th day of July 2003

Gayle R. Metzger
Asst. Deputy Clerk